CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 17, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M. Poff**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ROMEO D. TAYLOR,                          )
                                          )
            Plaintiff,                     )       Case No. 7:25-cv-00183
                                          )
v.                                        )       **MEMORANDUM OPINION**
                                          )
CHAD KILGORE, *et al.*,                   )       By:     Hon. Thomas T. Cullen
                                          )               United States District Judge
            Defendants.                    )

Plaintiff Romeo D. Taylor, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Chad Kilgore, DeWayne Lockhart, Lt. Richard Alsbrook, Captain Tatum, Correctional Officer ("C/O") Wilson, Cpl. Sobo,[1] Nurse Deborah Shields, and Ballad Health – Abingdon ("Ballad Health"). (*See* Compl. [ECF No. 1].) He alleges that Defendants denied him adequate medical care while he was incarcerated at Southwest Virginia Regional Jail Authority's Abingdon facility ("SWVRJA – Abingdon"), beat him without cause, and retaliated against him for complaining. (*See id.* at 2–5; Attach. 1 to Compl. [ECF No. 1-1].)

On June 6, 2025, the clerk issued requests for waiver of service to all Defendants on Plaintiff's behalf. On July 8, 2025, waivers were returned executed for Defendants Kilgore, Alsbrook, Tatum, Wilson, Sappo, and Shields, and notices of appearance were entered by counsel on their behalf. (*See* ECF Nos. 15, 16, 18, 19.) But Defendants Lockhart and Ballad Health were not able to be sent requests for waiver at the addresses Plaintiff provided. (*See* ECF Nos. 20, 21 (waivers sent to Lockhart and Ballad Health returned as undeliverable).)

---

[1] Plaintiff identifies this Defendant as Cpl. Sappo, but counsel clarifies that his name is correctly spelled Sobo. (*See, e.g.*, ECF No. 32, at 1.)

On July 11, 2025, the court ordered Plaintiff to provide the court with addresses at which Lockhart and Ballad Health could be served. (ECF No. 22.) The court cautioned Plaintiff that his failure to provide addresses within 30 days would result in the dismissal of his claims against Lockhart and Ballad Health without prejudice. (*Id.* at 1.) Plaintiff never provided addresses at which Lockhart or Ballad Health could be served, nor did he seek an extension of time in which to do so. Because Plaintiff never gave the court information necessary to accomplish service upon these Defendants, Plaintiff's claims against DeWayne Lockhart and Ballad Health will be dismissed without prejudice under Federal Rule of Civil Procedure 41(b) for failure to prosecute and failure to comply with the court's order.

The remaining Defendants have moved to dismiss Plaintiff's claims against them. (*See* Shields Mot. to Dismiss [ECF No. 28]; Alsbrook, Sobo, Wilson, Tatum & Kilgore (hereinafter "Jail Defendants") Mot. to Dismiss [ECF No. 32].) For the reasons that follow, the court will grant Defendant Shields's motion to dismiss and grant in part and deny in part the Jail Defendants' motion to dismiss.

**I.**

In his complaint, Plaintiff alleges that, while he was incarcerated at SWVRJA – Abingdon, unnamed individuals told him his cracked, sore skin (caused by either eczema or psoriasis) could not be treated. (Compl. 2.) He also claims a nurse told him he was not diabetic anymore, despite having been diabetic his entire life. (*Id.* at 2.)

He also alleges that, on March 7, 2025, between 4:30 p.m. and 5:00 p.m., "they [a]bout killed [Plaintiff] beating on [him]." (*Id.* at 2.) He alleges that he had asked to see a medical supervisor, but "they" refused to allow him to see one. (*Id.* at 4.) Plaintiff claims that, although

he was calm and respectful, C/O Wilson put his knee on Plaintiff's neck. (*Id.*) Plaintiff attempted to maneuver to block the motion, but Wilson bent Plaintiff's head and prevented him from doing so. (*Id.*) Wilson then slammed his knee and foot into Plaintiff's face and started punching Plaintiff in his face and ribs. (*Id.*) While this was occurring, other unidentified officers lifted him up and punched and kicked him before handcuffing him. (*Id.*) Plaintiff claims they hurt him, were trying to kill him, and called him derogatory names. (*Id.*) He next claims "they" tried to put him in solitary confinement for refusing to be handcuffed. (*Id.*) He alleges that when they ceased beating him, they put him in a "chicken[-]wing" hold and dragged him down the hall. (*Id.*) Plaintiff alleges he did not know why he was being removed from his cell. (*Id.*)

After Plaintiff was dragged down the hall, a nurse was dispatched to check his blood pressure. (*Id.* at 5.) He claims "they" had her do so for the sake of the cameras and that they actually "left [him] there to suffer with no remorse." (*Id.*) When Plaintiff was put in the "hole," "they slammed [him] in the cell and beat [him] up more." (*Id.*) Plaintiff alleges that the actions of these officers constituted excessive force and claims they were discriminatory based on Plaintiff's status as an autistic Black man. (*Id.*) Plaintiff prepared his allegations the night he was beaten and claims that, at that time, his hands were numb, bruised, and cut and that his body was sore. (*Id.*)

Finally, Plaintiff claims that "they" refused to feed him one night after he filed "the forms" and that he and multiple inmates have failed drug screens based on false positive results showing fentanyl use. (*Id.* at 2; Attach. 1 to Compl. 1.)

Defendant Shields responded to Plaintiff's claims by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Shield Mot. to Dismiss; Memo. in Supp. of

- 3 -

Shields Mot. to Dismiss [ECF No. 29].) A few weeks later, Defendants Alsbrook, Kilgore, Sobo, Tatum, and Wilson also moved to dismiss Plaintiff's claims against them under Rule 12(b)(6). (*See* Jail Defs.' Mot. to Dismiss.) Plaintiff has responded to both motions, and Defendants have replied. Thus, both motions are ripe for review.

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations

contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up).

## III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

The court liberally construes Plaintiff's complaint as asserting § 1983 claims for deliberate indifference to his medical needs in violation of the Eighth or Fourteenth Amendment, excessive force in violation of the Eighth or Fourteenth Amendment, and retaliation in violation of the First Amendment.

### A. Nurse Shields's Motion to Dismiss

Plaintiff's only claim against Nurse Shields appears to be that she was deliberately indifferent to his medical needs. Plaintiff does not make any allegations naming Nurse Shields specifically. However, he does allege that a "nurse" decided he was no longer diabetic. (Compl. 2.) Because Shields is the only nurse included as a Defendant in this action, the court infers

that Plaintiff is alleging that Shields was the one who told him he was not diabetic anymore. Nevertheless, Plaintiff has not stated a plausible claim for deliberate indifference to his medical needs against Shields.

Whether a plaintiff's claim for deliberate indifference to his serious medical needs is governed by the Eighth Amendment or the Fourteenth Amendment depends on his status at the time of the events giving rise to his claim. If plaintiff was a pretrial detainee at the time of the alleged deliberate indifference, his claims arise under the Fourteenth Amendment, which protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that [are] excessive in relation to that purpose." *Jenkins v. Woodard*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (quoting *Short v. Hartman*, 87 F.4th 593, 599); *see Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." (citations and internal quotation marks omitted)). If Plaintiff was a convicted prisoner at the time of the alleged indifference, however, his claims arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because 'adequate . . . medical care' is a basic condition of humane confinement, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Plaintiff does not clearly allege whether he was a pretrial detainee or a convicted prisoner at the time of the events described in his complaint. But in the memorandum supporting her motion to dismiss, Shields states that Plaintiff was a pretrial detainee (*see* Memo.

in Supp. of Shields Mot. to Dismiss 3), and Plaintiff does not dispute this assertion in his response to Shields's motion. Accordingly, the court construes Plaintiff's claim as one for violation of the Fourteenth Amendment.

To state a claim for deliberate indifference to medical needs under the Fourteenth Amendment, a plaintiff must allege:

> (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). Even liberally construing Plaintiff's complaint, he has not alleged that Shields intentionally, knowingly, or recklessly acted or failed to act to appropriately address a risk of serious harm from Plaintiff's medical condition, nor has he alleged that Shields's action or inaction posed an unjustifiably high risk of harm to him or that he was harmed as a result of Shields's conduct. His lone allegation that Shields declared him no longer diabetic, without more, cannot establish a Fourteenth Amendment violation.

Plaintiff asserts additional factual allegations in his response to Shields's motion to dismiss. (Pl.'s Resp. in Opp'n to Shield Mot. to Dismiss [ECF No. 31].) But the court may not consider such allegations in connection with Shields's motion. *Odjaghian v. HHS Tech. Grp., LLC*, 848 F. App'x 534, 541 (4th Cir. 2021) ("[I]t is well-established that parties cannot amend their complaints through briefing or oral advocacy.") (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). A

Rule 12(b)(6) motion tests the sufficiency of the *complaint*, and it is ultimately the factual matter in the complaint which determines whether the claims survive. *Occupy Columbia*, 738 F.3d at 116; *Iqbal*, 556 U.S. at 678.

Even if the court were to consider the few additional allegations in Plaintiff's response, they still do not establish that Shields's conduct posed an unjustifiably high risk of harm to him or ultimately harmed him. (*See* Pl.'s Resp. in Opp'n to Shields Mot. to Dismiss 1–2 (claiming he "was not seen or tested to know if [he] was a diabetic" and that Shields "was treating [him] like trash[,] putting her hand in [his] face[, and] saying side remarks").) Accordingly, Plaintiff has not stated a plausible deliberate-indifference claim against Shields.

No other allegations refer, even indirectly, to Shields. Because liability under § 1983 is "personal, based upon each defendant's own constitutional violations," a § 1983 claim "requires allegations about each defendant's personal involvement." *Thomas v. McFadden*, No. 3:24-CV-00716-KDB-SCR, 2025 WL 2711603, at *4 (W.D.N.C. Sept. 23, 2025) (citing *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)). Since there are no allegations concerning Shields's involvement in the violation of any other of Plaintiff's constitutional rights, the court will grant Shields's motion and dismiss Plaintiff's claims against her in their entirety.

### B. The Jail Defendants' Motion to Dismiss

Defendants Alsbrook, Sobo, Tatum, Kilgore, and Wilson seek dismissal of the claims against them on the ground that Plaintiff's complaint does not contain sufficient factual allegations concerning each of their personal involvement in the alleged constitutional violations. (*See* Jail Defs.' Mot. to Dismiss 3–5.) The court agrees that Plaintiff has not stated

plausible claims for relief against Alsbrook, Sobo, Tatum, or Kilgore. These Defendants' names do not appear anywhere in the complaint except in the caption. There is no discussion of their individual actions toward Plaintiff or what they did (or failed to do) to violate Plaintiff's rights. As discussed above, liability under § 1983 "will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Wilson*, 877 F.3d at 170. Here, there is simply not enough factual matter in the complaint to suggest more than the possibility of misconduct by Alsbrook, Sobo, Tatum, or Kilgore.

Again, Plaintiff tries to bolster his complaint by raising new allegations in response to the Jail Defendants' motion to dismiss. *See Odjaghian*, 848 F. App'x at 541. But, again, even if the court were to consider these additional allegations, Plaintiff has still not stated plausible claims against Alsbrook, Sobo, Tatum, or Kilgore. (*See* Pl.'s Resp. in Opp'n to Jail Defs.' Mot. to Dismiss 1 [ECF No. 35].)

      i.    <u>Excessive Force Claims</u>

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrikson*, 576 U.S. 389, 397 (2015). To state a Fourteenth Amendment excessive-force claim, a pretrial detainee must allege facts showing that "the force purposely or knowingly used against him was objectively unreasonable." *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024). This showing requires satisfying two elements. First, the plaintiff must allege facts that, if true, would show that the defendant acted deliberately "with respect to his physical acts." *Kingsley*, 576 U.S. at 396. This means that the defendant's state of mind "with respect to the bringing about of certain physical consequences in the world" must have been either purposeful,

knowing, or possibly reckless. *Id.* ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.") (emphasis in original).

Second, the allegations must show that use of force was "objectively unreasonable." *Id.* at 397. To determine whether the force used was reasonable, the court considers the following, non-exhaustive list of factors: (i) "the relationship between the need for the use of force and the amount of force used"; (ii) "the extent of the plaintiff's injury"; (iii) "any effort made by the officer to temper or to limit the amount of force"; (iv) "the severity of the security problem at issue"; (v) "the threat reasonably perceived by the officer"; and (vi) "whether the plaintiff was actively resisting." *Id.* The test for reasonableness is not to be applied "mechanically," but rather "requires careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 467 (2021). Consequently, an officer's use of force "cannot be judged in a vacuum" but rather "turns on the facts and circumstances of each particular case." *Aliff v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. 2:15-CV-13513, 2016 WL 5419444, at *7 (S.D.W. Va. Sept. 26, 2016) (citing *Kingsley*, 576 U.S. at 397). Because the reasonableness element of a Fourteenth Amendment excessive-force claim is "highly fact-dependent," the reviewing court "must take into account the perspective of a reasonable officer on the scene, including what the officer knew at the time[.]" *Bratcher v. Hampton Roads Reg'l Jail*, No. 1:16CV224 (AJT/IDD), 2018 WL 1037052, at *4 (E.D. Va. Feb. 21, 2018), *aff'd*, 738 F. App'x 793 (4th Cir. 2018) (citations omitted). Thus, "a court must have some knowledge of the circumstances surrounding a given use of force—beyond the unadorned accusation that it was excessive and generally in violation of all laws and regulations governing a prison official's use of force—in order to draw the inference that such use of force was

constitutionally unreasonable." *Aliff*, 2016 WL 5419444, at *7; *see also Vizbaras v. Prieber*, 761 F.2d 1013, 1016 (4th Cir. 1985) ("The use of force . . . is not *per se* unconstitutional.").

Plaintiff has not stated a viable excessive force claim against Tatum, Sobo, Alsbrook, or Kilgore. In his response brief, he alleges that Sobo was present during the altercation with Wilson and was "holding pepper spray ready to use it"—though apparently did not use it. (Pl.'s Resp. in Opp'n to Jail Defs.' Mot. to Dismiss 1.) The non-use of pepper spray is not a display of unreasonable force; to the contrary, Plaintiff's version of events leads the court to infer that Sobo practiced restraint and was attempting to tailor his *use* of force to the *need* for it. Plaintiff further alleges that Sobo heard Plaintiff yell for help but proceeded to drag him to the "hole" anyway. (*Id.*) But without more information concerning the circumstances of Sobo's involvement or the interaction between Plaintiff and Sobo while Plaintiff was taken to segregation, the court cannot find that dragging Plaintiff while he was yelling, alone, amounted to unreasonable use of force. *See Aliff*, 2016 WL 5419444, at *7; *see also Franklin v. Agnor*, No. 7:24-CV-00204, 2025 WL 262354, at *3 (W.D. Va. Jan. 22, 2025) (collecting cases in which courts dismissed Fourteenth Amendment excessive-force claims based on factual allegations insufficient to allow the court to infer that the defendant acted unreasonably).

Plaintiff's only allegations against Alsbrook and Kilgore are that Alsbrook "failed to make sure the jail is doing their job" and Kilgore "authorizes the poor treatment." (*Id.*) But Alsbrook and Kilgore are not liable based solely on their positions of authority within the jail. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . .§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution"). And Plaintiff has not offered sufficient

- 11 -

allegations to establish their liability as supervisors. A plaintiff can only maintain a § 1983 claim against a supervisor if he alleges (1) "that the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff," (2) "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (internal quotation marks omitted). Here, Plaintiff does not allege that Kilgore or Alsbrook knew about the specific force used against Plaintiff or that they caused his injury by their failure to act. Instead, Plaintiff attempts to hold Kilgore and Alsbrook liable merely because he claims their employees acted unconstitutionally, which he cannot do under § 1983. *Accord Iqbal*, 556 U.S. at 676. Accordingly, Plaintiff has not stated plausible constitutional claims against Kilgore or Alsbrook.

Plaintiff has also not stated an excessive-force claim, nor any other constitutional claim, against Tatum. Plaintiff alleges only that Tatum "denied his appeal" and told him later that the denial was "on [Plaintiff]." (Pl.'s Resp. in Opp'n to Jail Defs.' Mot. to Dimiss 1.) The denial of Plaintiff's appeal, without more, does not constitute a Fourteenth Amendment violation, and Plaintiff has not alleged facts—either rightly in his complaint nor improperly in his response brief—that, if true, would create constitutional liability on Tatum's part.

Plaintiff's claim against Defendant Wilson, however, is more complicated. Unlike the other Defendants, Plaintiff actually named Wilson and describes some of his specific actions in the facts section of his complaint. (*See* Compl. 4–5.) Taking Plaintiff's version of the facts

as true and making all reasonable inferences in his favor, the court finds that Plaintiff has stated a plausible excessive-force claim against Wilson.

First, Plaintiff's allegations allow the court to infer that Wilson acted intentionally regarding his physical acts toward Plaintiff. Plaintiff alleges that Wilson "put his knee" on Plaintiff's neck and "decided to bend [Plaintiff's] head back so that he could have easy access to [Plaintiff's] airways." (Compl. 4.) Plaintiff also alleges Wilson "shoved," "slamm[ed]," and "punch[ed]" him. (*Id.*) From these allegations, the court can reasonably infer that Wilson's actions were purposeful with respect to their physical consequences in the world. *See Kingsley*, 576 U.S. at 396; *cf. Dunham v. Cnty. of Monterey*, No. 18-CV-04467-AGT, 2020 WL 9395224, at *7 (N.D. Cal. Apr. 29, 2020) (finding force consisting of "punching" and "striking" was "clearly deliberate").

Plaintiff has also raised sufficient allegations to show that Wilson's use of force was objectively unreasonable. He claims that prior to Wilson's actions, Plaintiff acted "calmly and respectfully," "gave no problem," and was not given a reason for his removal from his cell. (Compl. 4.) He also alleges that the use of force was not justified and that it caused cuts, numbness, and bruising on his hands and wrists, along with general soreness in his body. Though additional facts could affect the court's evaluation of the reasonableness of Wilson's actions, as alleged, they constitute excessive and constitutionally unreasonable force. Therefore, the excessive-force claim against Wilson will not be dismissed.

ii.    Retaliation Claims

Finally, Plaintiff raises allegations in both his complaint and his response concerning his treatment after filing suit. (*See* Compl. 2, 5; Pl.'s Resp. in Opp'n to Jail Defs.' Mot. to

- 13 -

Dismiss 1.) But none of those allegations rise to the level of a First Amendment violation against any named Defendant.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (quoting *Martin v. Duffy* (*Martin II*), 977 F.3d 294, 299 (4th Cir. 2020)). Plaintiff's allegations of retaliatory conduct are not explicitly tied to any particular First Amendment activity on his part, but he appears to be claiming that he was retaliated against after filing another § 1983 suit against Defendants SWVRJA – Abingdon and Ballad Health. (*See* Compl. 2.) But Plaintiff has not alleged that any of the defendants personally took action that adversely affected his First Amendment rights. He generally alleges that he and other inmates falsely tested positive for fentanyl during drug screens and that "they" refused to feed Plaintiff one night after he "filed the forms." (*Id.*; Attach. to Compl. 1.) These generic allegations are insufficient to create personal liability for any of the individual Defendants named in this suit. *See Thomas*, 2025 WL 2711603, at *4; *Trulock*, 275 F.3d at 402.

Even if the court were to consider the additional allegations in Plaintiff's response brief, his retaliation claim still falls short. In his brief, he claims that inmates are transferred shortly after he summons them as witnesses. (Pl.'s Resp. in Opp'n to Jail Defs.' Mot. to Dismiss 1.) He also alleges that unnamed officers have been "trying everything in their power to make [him] crack," including talking about Wilson in front of him "knowing [Plaintiff will] have a bad day for hearing his name." (*Id.*) He further alleges that "they" talk about watching the

- 14 -

video footage of the March 7, 2025 incident to watch Plaintiff "cry." (*Id.*) But these allegations do not describe any conduct by Defendants individually, so they are not sufficient to state a First Amendment retaliation claim against any named Defendant. *See Thomas*, 2025 WL 2711603, at \*4; *Trulock*, 275 F.3d at 402. Therefore, Plaintiff's retaliation claims will be dismissed.

## IV.

For the reasons set forth above, the court will grant Defendant Shields's motion to dismiss (ECF No. 28) and grant in part and deny in part the Jail Defendants' motion to dismiss (ECF No. 32). Plaintiff's claims against Defendants Shields, Alsbrook, Sobo, Tatum, and Kilgore will be dismissed, but his excessive-force claim against Wilson will proceed. The court will also dismiss Plaintiff's claims against Defendants DeWayne Lockhart and Ballad Health – Abingdon under Federal Rule of Civil Procedure 41(b).

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 17th day of March, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE